JUSTICE RICE,
dissenting.
¶68 The Court offers several times that “there are no stated limits on who can file objections to claims in temporary preliminary decrees” under statute, see Opinion, ¶¶ 36,21,23, and reasons that this absence of limitation necessarily translates into a likewise broad right to a hearing. Opinion, ¶ 36. The Court concludes that MTU “has a sufficient ownership interest in water or its use” under § 85-2-233(l)(b), MCA, to have a right to a hearing on its objections. Opinion, ¶ 34. I disagree with the Court’s statutory interpretations and the conclusions reached thereby. I would affirm the Water Court.
¶69 That there are “no limits on who can file objections” is true only in a most technical sense, for the statutes clearly impose a limitation upon objections which may proceed to hearing. Section 85-2-233(l)(a), MCA, provides:
For good cause shown and subject to the provisions of subsection (9), a hearing must be held before the water judge on any objection to a temporary preliminary decree or preliminary decree by :
(i) the department;
(ii) a person named in the temporary preliminary decree or preliminary decree;
(iii) any person within the basin entitled to receive notice under 85-2-232(1); or
(iv) any other person who claims rights to the use of water from sources in other basins that are hydrologically connected to the sources within the decreed basin and who would be entitled to receive notice under 85-2-232 if the claim or claims were from sources within the decreed basin.
*101 (Emphasis added.) Only those included on this list are eligible to have a hearing by right. Any others are not and, therefore, a limitation upon actionable objections is inherent within the statutory structure.
¶70 MTU is included on this list of eligible objectors because it requested service of notice of the temporary preliminary decree from the Water Court, under § 85-2-232(l)(f)(iii), MCA, which any interested person can do.[1] However, merely requesting notice of the decree does not create the right to proceed to a hearing on an objection. Only those parties who can demonstrate “good cause” are entitled to a hearing, which is defined by § 85-2-233(l)(b), MCA, as “showing that a person has an ownership interest in water or its use that has been affected by the decree.” MTU and others have offered various interpretations of this provision and policy rationales to paint the statute as ambiguous, but I believe the wording and the meaning are straightforward and that contortions are unnecessary.
¶71 First, “person” is defined as “an individual, association, partnership, corporation, state agency, political subdivision, the United States or any agency of the United States, or any other entity.” Section 85-2-102(18), MCA. “Political subdivision” is further defined as, inter alia, a “public body of the state empowered to appropriate water.” Section 85-2-102(19)(a), MCA. Then, a person must have “an ownership interest in water or its use.” The key term is “ownership interest.” Good cause thus requires a person to have an ownership interest, either in the water (a “state agency” or a “political subdivision” representing the state), or in the water’s use (parties who hold a water right). The statutory definition of good cause perfectly reflects the tenets of our longstanding water law: the water is owned by the state; water rights are property rights, usufructory in nature, extending to the use of the water. Water right holders thus have an ownership interest in the water’s use. This plain wording application of the good cause provision also comports with the nature of water right adjudication as in rem proceedings, Nev. v. United States, 463 U.S. 110, 144, 103 S. Ct. 2906, 2925 (1983) (“water adjudications are more in the nature of in rem proceedings”), which determine inter sese the rights among the holders.
¶72 Therefore, the conclusion that MTU “has a sufficient ownership interest” in either the water or its use is incorrect. Opinion, ¶ 34. *102 Indeed, MTU does not even claim to have an ownership interest, but rather argues for interpretations of the statute which alleviate the requirement for ownership. Alternatively, MTU argues that, even if it has no right to a hearing, the Water Court may discretionarily grant it a hearing, as the statute “does not limit the Water Court’s power to allow parties to participate ....” With this I agree. While the statute limits the parties who are entitled to a hearing as a matter of right, it does not limit the Water Court’s discretion to conduct additional hearings, and the court’s discretion would well be moved to give airing to the concerns of MTU, given its long and active involvement in the basin.
¶73 I agree with Justice Nelson’s analysis that the Court has erred by importing common law standing concepts to this case. As he notes, the Water Court is a legislative creation, a specialized court created to perform a specialized function. In creating the Water Court, the Legislature specifically crafted the process to be followed by the court, including the standing requirements. I would enforce them as enacted and intended. While MTU makes several references to constitutional provisions within its arguments, it does not mount a constitutional challenge to the statutes governing the Water Court. I further agree with Justice Nelson that the Court has broadly opened the Water Court to a public participation process which was not intended under the statutes.

 MTU and the non-owner objectors within the companion case, Western Watersheds Project and Laurence D. Zuckerman, filed objections in the Water Court to over 100 water rights.